NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| : |  |
| : | Hon. Faith S. Hochberg, U.S.D.J. |
| : |  |
| : | MDL No. 1479 |
| : | Master Docket No. 02-1390 (FSH) (PS) |
| IN RE NEURONTIN ANTITRUST LITIGATION   : |  |
| : | **OPINION AND ORDER** |
| : |  |
| : | Date: November 30, 2012 |
| : |  |
| : |  |

**HOCHBERG, District Judge**:

This matter comes before the Court upon Class Plaintiffs' Motion for Discovery Pursuant to the Crime-Fraud Exception to Attorney-Client Privilege Relating to Defendants' Prosecution of the '476 Patent Litigation.  Plaintiffs seek *in camera* review of documents deemed privileged by Defendants Pfizer, Inc. and Warner-Lambert Company LLC (collectively, "Pfizer") relating to Pfizer's prosecution of the '476 Patent litigation in order to determine whether the crime-fraud exception to attorney-client privilege applies.  The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

**BACKGROUND**

The background of the instant litigation was set forth in detail in the Court's Opinions dated August 27, 2009, deciding Pfizer's motion to dismiss, dated January 25, 2011, granting Plaintiffs' motion for class certification, and dated August 10, 2011, granting in part and denying in part Class Plaintiffs' initial crime-fraud motion.  The Court presumes familiarity with the facts

1

and arguments summarized in those Opinions as well as the abbreviations and acronyms used

therein.

The instant motion was filed following the Court's August 10, 2011 Opinion (the "August

10 Order") denying Class Plaintiffs' initial request for *in camera* review of documents related to

Pfizer's '479 Patent litigation, finding that, at that juncture, Class Plaintiffs had not "set forth a

reasonable basis upon which to conclude that *in camera* review would demonstrate that

communications about the prosecution of the '479 Patent litigation were made with an intent to

further unlawful promotion or profit-making schemes involving off-label marketing."[1] August 10

Order at 9.

This Court found that Class Plaintiffs had not presented sufficient evidence "upon which

this Court could conclude that Pfizer's willingness to engage in misconduct with regard to off-

label promotion necessarily means that Pfizer filed the '479 Patent Litigation with ulterior

motives" and that "the connection between Pfizer's off-label promotion and the filing of the '479

Patent Litigation is simply too attenuated for this Court to form a good faith belief that the two

efforts are part of a singular antitrust scheme."  *Id.* at 10.  In a footnote, however, this Court

stated that "[w]hile Class Plaintiffs have not satisfied the requisite burden in order to seek *in

camera* review of the '479 Patent litigation documents at this time, this Court does not preclude

the possibility that Class Plaintiffs might later renew their application should additional

---

[1] This Court did grant *in camera* review of a select category of documents relating to Pfizer's off-
label marketing and subsequent representations to the Court on that subject, namely "documents
relating to (1) off label uses and/or off label marketing of Neurontin; (2) Pfizer's July 1, 1999
letter to Judge Chesler in *Warner-Lambert v. Purepac & Faulding*, No. 98-2749 (JCL); (3) the
December 27, 2000 hearing in the same action before Judge Chesler; (4) the summary judgment
papers submitted in that action concerning the '479 patent; and (5) statements made concerning
off-label marketing at the September 24, 2004 hearing in *Warner-Lambert v. Purepac*, No. 00-
2931 (JCL), before Judge Lifland." August 10 Order at 12.

information come to light." *Id.* at 10 n.12.

Based on this footnote, Class Plaintiffs now seek *in camera* review of documents related

to the '476 Patent litigation rather than the '479 Patent litigation, which the footnote referenced.

Class Plaintiffs contend that Pfizer's '476 Patent infringement actions filed against generic

producers constituted sham litigation.  They allege that these lawsuits were filed and maintained

as part of Pfizer's overall scheme to foreclose generic competition while it engaged in illegal off-

label marketing until it could shift the market to its Neurontin follow-on product, Lyrica.  Class

Plaintiffs argue that this is evidenced by Pfizer's admissions in its guilty plea for off-label

marketing, admissions in its 30(b)(6) deposition,[2] and documents obtained through discovery.

Class Plaintiffs also argue that Pfizer engaged in misrepresentations to Judge John C. Lifland of

the District of New Jersey and Judge Paul E. Plunkett of the Northern District of Illinois in its

infringement lawsuits against Purepac and Apotex, respectively, when those Judges considered

the defendants' requests for attorneys' fees.  According to Class Plaintiffs, Pfizer's failure to

disclose to those judges the existence of its criminal off-label promotion scheme and the '476

and '479 Patent infringement actions' role in that scheme constitutes another fraud sufficient to

warrant *in camera* review of privileged documents.

In opposition, Pfizer argues that Class Plaintiffs' motion is untimely because discovery

closed on December 14, 2009, any connection between the '476 Patent litigation and Pfizer's

off-label promotion is too attenuated, and Class Plaintiffs have not identified any misstatements

to the courts in the '476 Patent infringement actions, nor have they connected any such

---

[2] This refers to 30(b)(6) testimony that predates Class Plaintiffs' initial crime-fraud motion.  This 30(b)(6) testimony does not constitute new evidence discovered since the filing of the first crime-fraud motion.

statements to the furtherance of any crime or fraud.

## DISCUSSION

For attorney-client communications to be discoverable under the crime-fraud exception to the attorney-client privilege, the communications at issue must be made "for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 562 (1989).  There must be a logical link between the privileged communication and the proposed crime or fraud.  *Prudential Ins. Co. v. Massaro*, No. 97 Civ. 2022 (AMW), 2000 WL 1176541, at *10 (D.N.J. Aug. 14, 2000).  The legal advice "must relate to future illicit conduct by the client; it [must be] the *causa pro causa*, the advice that leads to the deed."  *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992); *see also United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) ("[i]t does not suffice that the communications may be related to a crime; . . . they must actually have been made with an intent to further an unlawful act").

Class Plaintiffs' instant motion is denied on two grounds.  First, it is untimely. Class Plaintiffs have not established good cause showing why they could not have sought discovery related to the '476 Patent litigation in their initial crime-fraud motion filed on February 19, 2010, in which they sought discovery related to the '479 Patent litigation. In that motion, Class Plaintiffs said nothing of the '**476** Patent litigation, but now request crime-fraud discovery related to that litigation pursuant to a footnote in the August 10 Order that referred to a renewed discovery application regarding the '**479** Patent litigation, only if new information should come to light.  Class Plaintiffs' instant motion does not state that it is based on information that was not available at the time it filed its initial crime-fraud motion.

Second, Class Plaintiffs have not established a sufficient connection between

Pfizer's '476 Patent litigation and the illegal off-label promotion.  Class Plaintiffs present

evidence indicating that Pfizer may have learned during the '476 Patent infringement

actions that the ANDA filers may not have actually been infringing the patent because the

gabapentin at issue was made in Israel, not the United States.  Still, Pfizer continued on

with the litigation.  However, as courts in those actions indicated, it was reasonable for

Pfizer to continue with the actions and seek discovery on the generics' actual production

process, and its prosecution of the actions was not baseless.  *Warner Lambert Co. v.*

*Purepac Pharm. Co*., No. Civ. A. 98-2749, 2003 WL 21698310, at *4 (D.N.J. May 22,

2003) ("While Purepac has presented evidence that Warner-Lambert was told that

Purepac's gabapentin was anhydrous and produced in Israel, Warner-Lambert had the

right to investigate those representations by engaging in discovery."); *Warner-Lambert*

*Co. v. Apotex Corp*., No. 98-C-4293, 2003 WL 22887861, at *4-*5 (N.D. Ill. Dec. 4,

2003) (explaining that the court allowed Warner-Lambert time to get information it

needed to conduct a fair and reasonable investigation of its claims, and that Warner-

Lambert did not initiate a frivolous suit even if it knew that Teva manufactured

gabapentin).

Additionally, while Plaintiffs point to internal Pfizer documents to show that

Pfizer did not think the '476 Patent protected it from generic market entry,[3] such evidence

---

[3] For example, Class Plaintiffs point to minutes from an August 29, 1995 meeting of the
Neurontin Indications Decision Analysis Group which stated: "[i]t is expected that the method of
use patent for epilepsy will expire in January, 2000.  Counsel felt that the Waxman-Hatch
extension until January 2000 was more or less guaranteed as was expiry after that point. . . . Post
meeting note: confirmation of patent of use patent extension until 1/16/2000 has been received."

does not sufficiently connect such potentially "sham" litigation to Pfizer's off-label

promotion scheme.  Therefore, *in camera* review of the '476 Patent litigation documents

is denied.  *See In re ML-Lee Acquisition Fund II, LP*, 848 F. Supp. 527, 566 (D. Del.

1994) (denying motion for discovery pursuant to crime-fraud exception because "mere

allegations are not sufficient" to form "requisite factual basis").

**CONCLUSION**

For the reasons set forth above,

**IT IS** on this 30th day of November, 2012,

**ORDERED** that Plaintiffs' Motion for Discovery Pursuant to the Crime-Fraud

Exception to Attorney-Client Privilege Relating to Defendants' Prosecution of the '476

Patent Litigation is **DENIED**.


/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

November 18, 2011 Declaration of Joseph Opper, Ex. 1. Class Plaintiffs also point to an internal document entitled "1998 Operating Plan" that states that "1998 will be an important year in which we must finalize on strategies and begin an accelerated program to defend generic threat we face in the year 2000."  *Id.*, Ex. 21.